# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **GLENN J. MORAN** | ) | **CASE NO. 1:05CV2285** |
| | ) | |
| **Appellant,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | <u>**OPINION AND ORDER**</u> |
| | ) | |
| **THE OFFICIAL COMMITTEE OF** | ) | |
| **ADMINISTRATIVE CLAIMANTS,** | ) | |
| *et al.* | ) | |
| | ) | |
| **Appellees.** | ) | |

<u>**CHRISTOPHER A. BOYKO, J.**</u>:

This matter comes before the Court upon the Motion (ECF DKT #11-1) of Appellee, The Official Committee of Administrative Claimants ("ACC"), to Dismiss Appellant Glenn Moran's ("Moran") Appeal of the Standing Order issued by the United States Bankruptcy Court for the Northern District of Ohio ("Bankruptcy Court") on September 2, 2005.  For the reasons that follow, the Motion to Dismiss is granted.

## I.  FACTS

This case involves the ongoing bankruptcy proceedings of LTV Steel Corporation ("LTV").  Because LTV refused to pursue litigation against its own officers, the ACC was formed to investigate current and former LTV officers and pursue claims against them.  In September of 2005, the Bankruptcy Court issued a Standing Order authorizing the ACC to pursue litigation against certain LTV officers, including Appellant, Glenn J. Moran, on behalf of

the LTV estate.

The Bankruptcy Court relied on Sixth Circuit precedent in granting the ACC authorization to pursue the claims.  The relevant law stated that in order for a creditors' committee to have standing to commence litigation on behalf of a bankrupt entity, the committee must show the following four elements:

> (1) a demand has been made upon the statutorily authorized party to take action, (2) the demand is declined, (3) a colorable claim that would benefit the estate if successful exists, based on a cost-benefit analysis performed by the court, and (4) the inaction is an abuse of discretion ('unjustified') in light of the debtor-in-possession's duties in a Chapter 11 case.

*Canadian Forest Prods. Ltd. v. J.D. Irving, Ltd.* (*In re The Gibson Group*), 66 F.3d 1436, 1446 (6th Cir. 1995).  These requirements are known as the *Gibson Group* requirements.

During the Bankruptcy Court proceedings, Moran disputed whether the ACC had alleged colorable claims against him.  This was the only prong of the *Gibson Group* requirements that was in dispute.  After several months of deliberation, the Bankruptcy Court concluded that the ACC had alleged colorable claims.  Therefore, the ACC had satisfied the *Gibson Group* elements and was authorized to pursue litigation against Moran and others on behalf of the LTV estate.

## II.  LAW AND ANALYSIS

### Standard of Review
### 28 U.S.C. § 158(a)

Because Moran wishes to appeal the Standing Order, he must establish that this Court has jurisdiction to hear the appeal pursuant to 28 U.S.C. § 158(a).  The statute provides as follows:

(a)     The district courts of the United States shall have jurisdiction to hear appeals

(1)     from final judgments, orders, and decrees;
(2)     [omitted], as n/a.
(3)     with leave of the court, from other interlocutory orders and decrees.

Moran must show that either sections one or three are met in order for this Court to have appellate jurisdiction to hear the appeal.

## Finality Rule

Courts have defined a "final" judgment as a decision that "ends the litigation on its merits and leaves nothing for the court to do but execute the judgment." *In re Sun Valley Foods Co.*, 801 F.2d 186, 189 (6th Cir. 1986) (quoting *Catlin v. United States,* 324 U.S. 229, 233 (1945)). There must have been "a final determination of the rights of the parties to secure the relief they seek in [the] suit." *In re Tile Outlet, Inc.,* 2006 U.S. Dist. LEXIS 44130, *11 (S.D. Tex. 2006).

The finality rule is applied in a more pragmatic manner in bankruptcy cases. *Dow Corning Corp.*, 86 F.3d 482, 488 (6th Cir. 1996). Therefore, orders that could be considered interlocutory may be appealable in the bankruptcy context. *Id.* The general rule is "where an order in a bankruptcy case 'finally dispose[s] of discrete disputes within the larger case,' it may be appealed immediately." *Id.* (quoting *In re Saco Local Dev. Corp.*, 711 F.2d 441, 444 (1st Cir. 1983)). The court in *Dow Corning* found that a transfer order in a bankruptcy case was immediately appealable. *Id.*

In the present case, no discrete dispute has been decided. The Bankruptcy Court's Standing Order only authorizes the ACC to pursue claims on behalf of LTV. A Bankruptcy Court order must "conclusively determine substantive rights" in order to be considered final. *See In re Delta Servs. Indus.,* 782 F.2d 1267, 1270 (5th Cir. 1986). No substantive rights have been determined by the Bankruptcy Court's Standing Order. The Order was purely procedural

and it only authorized the commencement of litigation.  According to *In re Delta*, an order is interlocutory, and therefore unappealable, if it is only "a preliminary step in some phase of the bankruptcy proceeding [and does] not directly affect the disposition of the estate's assets."  *Id.* This is exactly the case here.

Also, the ACC has pointed to a plethora of cases holding that orders are not "final" if they only allow litigation to move forward in another forum.  *See, e.g., Isabel Romeu VDA, de Fuertes v. Drexel, Burnham, Lambert, Inc.,* 855 F.2d 10, 11 (1st Cir. 1988); *Connelly v. Shatkin Inv. Corp.,* 57 B.R. 794, 795-97 (N.D. Ill. 1986); *America Healthcare Group, Inc. v. Melillo*, 233 B.R. 70, 72-73 (E.D.N.Y. 1998).  Here, the Bankruptcy Court's Standing Order merely allows the ACC to pursue litigation against Moran and others in the District Court.  There do not seem to be, nor does Moran point out, any analogous cases where an Order, similar to the one in this case, was considered final.

One of the cases the ACC has submitted to this Court is *In re Tile*, which is very analogous to the facts in this case.  In *In re Tile*, a bankruptcy court authorized a debtor's unsecured creditor's committee to pursue litigation on behalf of the bankruptcy estate.  The court held that the bankruptcy court's standing order was not final because "[t]he issue of whether the Committee has standing is not the discrete judicial unit" as required by 28 U.S.C. § 158.  *In re Tile, supra* at *14-15; *See also In re Adelphia Comm. Corp.*, 2006 U.S. Dist. LEXIS 29741, *4-5 (S.D.N.Y. 2006) (holding that a bankruptcy court's standing order was not final because it did not finally dispose of discrete disputes within the larger case).  These cases further support the ACC's claim that the Standing Order was not a final appealable order.

**"Collateral Order" doctrine as an exception to the finality rule**

-4-

The requirement of finality has a limited exception called the "collateral order" doctrine. Under the "collateral order" doctrine, an order, not normally seen as final, would be considered final for appeal purposes.  The appellant would have to show the order "(1) conclusively determines the disputed question; (2) resolves an important question completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from final judgment." *WCI Steel, Inc. v. Wilmington Trust Co.*, 2005 U.S. Dist. LEXIS 20943, at \*26-27 (N.D. Ohio 2005); *In re Westwood Shake and Shingle, Inc.*, 971 F.2d 387, 390 (9th Cir. 1992).  There can be no appeal if the appeal does not meet all three of the requirements.  *Rauscher Pierce Refsnes, Inc. v. Birenbaum*, 860 F.2d 169, 171 (5th Cir. 1988).  "Collateral order" is a very rare exception to the finality rule, and all doubts should be resolved in favor of nonappealability.  *In re PHM Credit Corp.*, 99 B.R. 762, 765 (E.D. Mich. 1989).  The United States Supreme Court has said that only a "narrow class of decisions satisfy [the requirements]."  *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994).

The second prong of the "collateral order" doctrine has not been met in this case.  The interlocutory appeal involves issues and questions which are enmeshed in the merits of the dispute itself.  Moran admits that one of the appeal issues is whether the claims against him fail as a matter of state law.  Not only is this not separate from the merits of the underlying action, it goes to the heart of them.  If this Court had to determine whether or not the claims were colorable, it would necessarily have to make considerations which are enmeshed in the legal issues.  *See In re Tile Inc.*, *supra*  at \*20 (holding that a determination of whether a claim was colorable would involve considerations that are enmeshed in the legal issues of the case).

Since the second prong of the "collateral order" doctrine has not been met, the doctrine

does not apply.  The "collateral order" doctrine is designed to address trial court orders "affecting rights that will be irretrievably lost in the absence of an immediate appeal."  *In re Adelphia*, *supra* at *5.  Moran's rights will not be irretrievably lost; in fact, he can present all his defenses and file a Motion to Dismiss in the litigation the ACC has brought against him.  The "collateral order" doctrine is not designed for this kind of situation.

Arguably, Moran has not proven the first or third prongs of the "collateral order" doctrine as well.  The Standing Order does not conclusively determine Moran's liability.  In fact, the Order merely authorizes the ACC to pursue litigation against Moran and others.  Also, the Standing Order is not effectively unreviewable absent an appeal.  In *WCI Steel, Inc.*, *supra* at *30, the Court held that "[t]he irreparable harm contemplated by the collateral order doctrine is that which results from 'trial court orders affecting rights that will be irretrievably lost in the absence of an immediate appeal."  Just because Moran must defend against the underlying lawsuit filed by the ACC, does not mean that he is irreparably harmed.  *See, e.g., Richardson-Merrell Inc. v. Koller*, 472 U.S. 424, 436 (1985).

*In re Tile* is again instructive regarding the "collateral order" doctrine and its application here.  The court in *In re Tile* found that the appellant had not met the second prong of the doctrine.  *Supra* at *19-20.  The court reasoned that it would have to delve into the merits of the appellant's claim that the committee's cause of action was not colorable.  *Id.*  Courts have consistently held this is not permissible under the "collateral order" doctrine.

**<u>Interlocutory Appeals</u>**

Part three of 28 U.S.C. § 158(a) allows district court to hear appeals "with leave of the court, from other interlocutory orders and decrees."  However, interlocutory appeals are very

-6-

rarely permitted and generally only in extraordinary circumstances. *In re Huff*, 1998 U.S. Dist. LEXIS 2452 at *4 (W.D. Mich. 1998). Specifically, if there are any doubts whether an interlocutory appeal is allowed, the question is resolved in favor of finding the order non-appealable. *United States v. Stone*, 53 F.3d 141, 143-144 (6th Cir. 1995).

28 U.S.C. § 158(a)(3) governs bankruptcy appeals in federal district courts. However, since that statute does not list any factors to determine whether an interlocutory appeal is appropriate, courts must use 28 U.S.C. § 1292(b) by analogy. This statute governs interlocutory appeals to federal courts of appeals from district court orders. The statute specifies factors to determine when interlocutory appeals are appropriate.

Section 1292(b) provides the following:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

First, the Standing Order does not appear to involve a controlling question of law. To involve a controlling question of law, the order must involve a "pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *In re Adelphia Comm. Corp.*, *supra* at *9. The question must also materially effect the outcome of the case. *WCI Steel, Inc., supra* at *35-36. Orders which are purely procedural or ministerial do not satisfy this test. *Lovelace v. Rockingham Mem. Hosp.*, 299 F. Supp. 2d 617, 623 (W.D. Va. 2004).

Moran asks this Court to re-examine the record and decide whether the ACC's claims would be colorable. This is not a question of pure law. According to Section 1292 and the

relevant case law, this is inappropriate for an interlocutory appeal.  There are only issues of fact; therefore, it is inappropriate for this Court to hear this interlocutory appeal.

There is also no substantial ground for differences of opinion.  This standard requires that there be a difference of opinion regarding the law, not just a difference of opinion as to how the law is applied.  *In re Charlotte Comm'l Group, Inc.*, 2003 U.S. Dist. LEXIS 5392, at *8 (M.D.N.C. 2003).  All parties agreed that *Gibson Group* applied in the Bankruptcy Court's determination that ACC would have standing to sue.  Although there may be a difference of opinion as to whether a particular prong of *Gibson Group* was met, there is no difference of opinion regarding the applicability of *Gibson Group*.  The difference of opinion prong of Section 1292 has not been met.

Finally, an immediate appeal in this case will not materially advance the ultimate termination of the litigation.  This third prong of Section 1292 is clearly not met.  In fact, a Stay Order has been entered by District Judge Nugent in the underlying suit filed by the ACC against Moran.  An immediate appeal of the Standing Order will delay resolution and will not materially advance the ultimate termination of the litigation.

## Moran lacks standing because he is not a "person aggrieved"

The Sixth Circuit has established the "person aggrieved" doctrine to assess whether an appellant has standing to appeal a bankruptcy court order.  *In re Troutman Enterprises, Inc.*, 286 F.3d 359, 364 (6th Cir. 2002).  In order to be a "person aggrieved," the appellant must "have a financial stake in the bankruptcy court's order."  *Id.*  Specifically, an appellant must be "directly and adversely affected *pecuniarily* by the order."  *Fidelity Bank Nat'l Ass'n v. M.M. Group, Inc.*, 77 F.3d 880, 882 (6th Cir. 1996) (emphasis added).

-8-

Moran argues he is a person aggrieved because the order makes him subject to litigation pursued by the ACC.  In fact, the ACC has already filed claims against him.  However, appellate courts, including the Sixth Circuit, have held that the risk of litigation or an appellant being subject to litigation is not enough to make them a "person aggrieved."  *See In re First Cincinnati, Inc.*, 286 B.R. 49, 53 (B.A.P. 6th Cir. 2002) (holding "an order which has the...effect of nudging a party into someone else's litigation sights is not normally appealable by that party"); *Fidelity Bank Nat's Ass'n*, 77 F.3d at 883 (the possibility of litigation is insufficient to confer standing on appellant).  Moran argues that, unlike in *Fidelity*, he has already been sued.  However, there are no cases which support the argument that litigation, whether real or potential, makes someone a "person aggrieved" for standing purposes.

Furthermore, the ACC correctly argues that Moran cannot be a "person aggrieved" because he no longer has any economic stake in the dispute.  He resigned as an employee of LTV in 2005 and his defense costs will be paid out of a trust.  Moran has **no** pecuniary interest that has been adversely effected by the Standing Order.  Therefore, he is not a "person aggrieved."

### III.  CONCLUSION

As outlined above, Moran has ample opportunity to raise defenses or seek dismissal in the case entitled, *The Official Committee of Administrative Claimants v. Moran.*  The Bankruptcy Court's Standing Order is not appealable since it was not a final order; and because the "collateral order" doctrine does not apply.  Moreover, Moran is not a "person aggrieved" and lacks standing.  Therefore, the Motion to Dismiss Moran's Appeal of the Standing Order of

September 2, 2005 is granted.

**IT IS SO ORDERED.**

**DATE: November 7, 2006**

<u>**s/Christopher A. Boyko**</u>
**CHRISTOPHER A. BOYKO**
**United States District Judge**